786 F.2d 733
 121 L.R.R.M. (BNA) 3259, 104 Lab.Cas. P 11,797
 LOCAL UNION 1392, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Indiana & Michigan Electric Co., Intervenor.
 No. 85-5221.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 13, 1986.
Decided March 26, 1986.
 
 Laurence J. Cohen, Robert D. Kurnick, Victoria L. Bor, argued, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for petitioner.
 Guy Farmer, argued, Jonathan A. Cohen, Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., and Frederic L. Sagan, Sr. Labor Counsel, American Elec. Power Ser. Corp., Columbus, Ohio, for intervenor.
 Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., and Fred Havard, argued, William Little, Regional Director, Region 25, N.L.R.B., Indianapolis, Ind., for respondent.
 Carl L. Taylor, Kirland & Ellis, Washington, D.C., for amicus Chamber of Commerce of the U.S.
 Before KEITH and MARTIN, Circuit Judges, and WEBER,* District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Local 1392 of the International Brotherhood of Electrical Workers petitions this Court for review of a decision of the National Labor Relations Board in favor of the employer, Indiana & Michigan Electric Company. 273 N.L.R.B. No. 193 (1985).
 
 
 2
 In November, 1978, Local 1392 filed unfair labor practice charges against Indiana & Michigan alleging that the employer had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act by imposing harsher discipline on two union officers than on ten other employees, all of whom had participated in the same unauthorized work stoppage. After an investigation, the Board's General Counsel issued a complaint against the employer. The administrative law judge upheld the unfair labor practice charges, finding that the employer had violated the Act. On review, the NLRB reversed the administrative law judge's decision and dismissed the complaint. The Union appeals this dismissal.
 
 
 3
 The facts of this case are straightforward and undisputed. On August 21, 1978, fifteen employees in the line department at Indiana & Michigan's Muncie, Indiana plant staged an unauthorized work stoppage. The employer issued three-day suspensions to the ten rank-and-file members who participated in the work stoppage, and five-day suspensions to the two instigators of the incident and two union stewards.[1] The employer based its harsher discipline of stewards Ridley and Maxwell on their "greater responsibility to end the unauthorized work stoppage"; the company did not contend that the stewards led or actively promoted the misconduct.
 
 
 4
 The issue presented by these facts is whether an employer's selective discipline of a union official, based on his union status, violates section 8(a)(3) of the NLRA. The Board's inconsistency on this issue[2] was resolved by the Supreme Court's decision in Metropolitan Edison v. NLRB, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983), which held that an employer may impose selective discipline in this situation if the union has made a "clear and unmistakable" waiver of its officials' statutory right to be free from such disparate treatment. Id. at 707, 103 S.Ct. at 1476. The parties agree on the applicability of the legal principles of Metropolitan Edison to this case; they disagree as to whether their particular contractual language constitutes the requisite "clear and unmistakable" waiver.
 
 
 5
 The Metropolitan Edison court, in reaffirming union officials' statutory right to be free from selective discipline based on their union status, held that a general no-strike clause was insufficient to establish waiver of such a protected right. Id. at 707-08, 103 S.Ct. at 1476-77. The court recognized, however, that "a union and an employer reasonably could choose to secure the integrity of a no-strike clause by requiring union officials to take affirmative steps to end unlawful work stoppages." Id. at 707, 103 S.Ct. at 1477. Specifically, the court ruled that "a union may waive this protection by clearly imposing contractual duties on its officials to ensure the integrity of no-strike clauses." Id. at 710, 103 S.Ct. at 1478.
 
 
 6
 We agree with the Board that Indiana & Michigan's contract with Local 1392 imposed affirmative duties on union officials sufficient to establish a waiver of those officials' section 8(a)(3) right to be free from disparate discipline. The relevant contractual language provides:
 
 
 7
 The Union agrees that, in the event of any violation (other than lockout) of the provisions of the foregoing paragraph, it will in good faith and without delay publicly disavow such violation, exert itself to bring about a quick termination of such violation and insist that the employee or employees involved cease such violation. To that end the Union will promptly take whatever affirmative action is necessary. If the Union has not authorized, participated in or condoned such violation and fulfills its obligations under this paragraph with respect to any such violation, the Company agrees that it will not sue the Union for any damages resulting from such violation.
 
 
 8
 Art III, Sec. 2.
 
 
 9
 The Union argues that because the language of the contract refers to the union as an entity, and not to its individual officers, the union officers owe no duty to the employer. It correctly notes that the contractual assumption of these duties imposes damage liability on the union under Carbon Fuel v. Mine Workers, 444 U.S. 212, 216-18, 100 S.Ct. 410, 413-15, 62 L.Ed.2d 394 (1979), and contends that this liability is the extent of the employer's remedy for breach of the provision. The Union bases its argument on the well-established principle of agency that an agent is liable only to the principal for a breach of a duty owed to a third party.
 
 
 10
 The Union's reliance on agency principles in this context is misplaced. A valid waiver of an employee's statutory right renders the right unprotected under the National Labor Relations Act. Clearly, rank-and-file employees may be discharged for disobeying a contractual no-strike clause. A valid waiver of union officials' protected rights should have the same effect. The District of Columbia Circuit assessed a similar argument advanced by the Board as "wholly unconvincing," Fournelle v. NLRB, 670 F.2d 331, 339 & n. 16 (D.C.Cir.1982), and we agree.
 
 
 11
 In a case decided before Metropolitan Edison, the Third Circuit found the language of a collective bargaining agreement imposed specific enforceable duties on union officials. Gould, Inc. v. NLRB, 612 F.2d 728 (3d Cir.1979), cert. denied, 449 U.S. 890, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980). The contractual obligations assumed by the union in that case were very similar to those agreed to by Local 1392. The language of the Gould contract, however, imposed these duties specifically upon "the Union, its officers and representatives" (emphasis added) rather than on the Union alone. Id. at 730, n. 3.
 
 
 12
 This difference in language cannot hold the legal significance attributed to it by the Union in this case. Obviously, unions act only through their officers. A union's assumption of the duty to end an unauthorized work stoppage necessarily imposes a concomitant duty upon its officials to implement that obligation. We believe that the contractual language in this case illustrates the intent of the Union for its officials to attempt to prevent unauthorized work stoppages, and that this language constitutes a "clear and unmistakable waiver" of those officials' right to be free from selective discipline.[3] This waiver is the result of the specific additional duties assumed by the union under the contract, and is not necessarily inherent in an employee's position as a union official. NLRB v. Babcock & Wilcox Co., 697 F.2d 724, 732-33 & n. 9 (6th Cir.1983). Compare Indiana & Michigan Electric Co. v. NLRB, 599 F.2d 227, 230 (7th Cir.1979).
 
 
 13
 The Board's interpretation of a collective bargaining agreement is entitled to deference if it is reasonable and consistent with the policies of the Act. NLRB v. City Disposal Systems, 465 U.S. 822, 829-30, 104 S.Ct. 1505, 1510-11, 79 L.Ed.2d 839 (1984); NLRB v. Local 534, Construction & General Laborers' Union, 778 F.2d 284, 287 (6th Cir.1985). The Board's interpretation of the language of this contract was reasonable, consistent with the policies of the Act, and in accord with the Supreme Court's pronouncements in Metropolitan Edison. The petition of the Union is therefore denied, and the order of the Board is enforced.
 
 
 
 *
 Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The Union's highest official at the plant was not suspended because the employer's investigation revealed he attempted to persuade the employees to return to work
 
 
 [2]
 The Board's most definitive holding on this issue prior to Metropolitan Edison was in Precision Castings Co., 233 N.L.R.B. 183 (1977), in which it held that selective dismissal of a shop steward who participated in and made no effort to terminate an illegal strike constituted discrimination based solely on the holding of union office and thus was violative of sections 8(a)(1) and 8(a)(3). Before Precision Castings, the Board, on several occasions, had found no unfair labor practice in the dismissal of union stewards based on their participation in illegal strikes. See, e.g., Chrysler Corp., 232 N.L.R.B. 464 (1977); Super Value Xenia, 228 N.L.R.B. 1254 (1977)
 
 
 [3]
 In its amicus brief, the Chamber of Commerce notes that imposing these obligations on union stewards is the logical corollary to the award of superseniority against layoff permitted the officials because of the importance of their function. Dairylea Cooperative, Inc., 219 N.L.R.B. 656 (1975). This interesting argument is not persuasive here, both because we have no evidence before us concerning the parties' agreement on the contractual issue of superseniority, and because this Court has already rejected the notion of a higher responsibility imposed on union representatives by virtue of their office. NLRB v. Babcock & Wilcox, 697 F.2d 724, 732 (6th Cir.1983)